IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Justin Spiehs<br><br>                        Plaintiff<br><br>v.<br><br>Anthony Lewis, in his individual<br>capacity et al<br><br>                       Defendants | Case No.   5:23-cv-04121-TC-GEB<br><br>PLAINTIFFS' MOTION FOR<br>PRELIMINARY INJUNCTION &<br>MEMORANDUM OF LAW IN SUPPORT<br>OF MOTION FOR PRELIMINARY<br>INJUNCTION |

The plaintiff Dr. Justin Spiehs labors under an unconstitutional permanent ban under threat of trespass regarding all USD 497 property – which includes Sunday morning church services and USD 497 school board meetings – all of which are located on USD 497 property.  Injunctive relief should now be afforded.

## LEGAL STANDARD

To obtain a permanent injunction, Dr. Spiehs "must prove (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *United States v. Uintah Valley Shoshone Tribe*, 946 F.3d 1216, 1222 (10th Cir. 2020).[1]  He suffers irreparable harm absent an injunction because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese v. Cuomo*, 141 S. Ct. 63, 67 (2020). Finally, the last two factors merge when the opposing party is the government, *Denver Homeless out Loud*

---

[1] To obtain a preliminary injunction there must be: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).  That test is also met.

*v. Denver,* 32 F.4th 1259, 1278 (10th Cir. 2022), and injunctions "protecting the core First Amendment right of political expression" serves the public interest, *Homans v. City of Albuquerque,* 264 F.3d 1240, 1244 (10th Cir. 2001).

## Facts

USD 497 school district is governed by the Board of Education for USD 497 which conducts its meetings open to the public. **ECF 1 (VERIFIED COMPLAINT), P.8 ¶17.** The Board provides time for public comments at its regular meetings. **ECF 1 ¶20.** Defendant Lawrence School Board chooses to conduct its open public meetings on USD 497 school district property. **ECF 1 ¶20.** Defendant Anthony Lewis is Superintendent of Schools for Lawrence USD 497 School District. **ECF 1 ¶5.** Defendant Superintendent Anthony Lewis is well aware that the Lawrence School Board conducts its open meetings on USD 497 school district property. **ECF 1 ¶34.** Defendant Lewis has banned Dr. Spiehs from USD 497 property since October 26, 2021. **ECF 1, ¶¶ 43-45; 58-61.** Dr. Spiehs would like to personally and physically attend USD 497 school board meetings but has not done so because of violating trespass law. **ECF 1 ¶57.**

On April 25, 2022, the Board conducted an open meeting subject to the Kansas Open Meetings law. Dr. Spiehs was banned by defendant Lewis from associating with those physically present or to physically attend that meeting. **ECF 1 ¶109.** Dr. Spiehs was provided a WebEx connection. Dr. Spiehs attempted to read a story about a character named "Lewis Anthony." Defendant Lewis gestured to the defendant Board President with his hand indicating that Dr. Spiehs should be silenced or disconnected.

The Board president instructed the WebEx operator to terminate Dr. Spiehs' WebEx connection. **ECF 1 ¶110.** On May 23, 2022, the defendants conducted an open meeting. Dr. Spiehs was prohibited by defendant Lewis from physically attending that open meeting.  Dr. Spiehs was given a WebEx connection.  Dr. Spiehs then read the entire same story he had prepared at the April 25, 2022, open meeting with the real or fictional names removed.  Dr. Spiehs was not interrupted in giving this same speech. **ECF 1 ¶112.**  On June 1, 2022, Dr. Spiehs received a letter from attorney Jeffrey L. Heiman stating that "due to multiple and repeated violations of USD 497's public commentary policy (BCBI) you will not be allowed to provide public comment via Webex for a period of ninety (90) days from the date of this letter." **ECF 1 ¶114.** The letter stated in full that the following:



**ECF 1 ¶114**

When attorney Heiman was asked to cite the Board authority to ban an individual, he referred to https://www.usd497.org/domain/6884. ᴇᴄꜰ 1 ¶116. Mr. Heiman was asked "I looked at the link. I didn't see anything about being able to ban members of the public but I may be missing something. Is there something specific you can point me to on that?" Attorney Heiman responded on July 1, 2022, stating "You are correct that the Board's policies and rules do not contain a 'penalty' provision. Nevertheless, the Board clearly has the authority to enforce its policies and rules as well as control its proceedings to ensure orderly and efficient meetings." ᴇᴄꜰ 1 ¶117. Attorney Heiman did not identify what or when the purported violations occurred. Heiman did not provide Dr. Spiehs any notice of any purported violation and did not solicit his answer or explanation before the adverse consequences were meted out by the defendants. ᴇᴄꜰ 1 ¶118. On December 1, 2023, the plaintiff emailed defendant Lewis asking "I have attempted to reach you numerous times about my permanent ban and have received no response from you. Unless I hear from you otherwise, I assume I am still permanently banned." ᴇᴄꜰ 1, ¶58. On December 4, 2023, the plaintiff emailed the chief of police Lockhart and stated: "I have attempted to reach Superintendent Anthony Lewis multiple times about the ban from school district property he placed on me in October 2021 but he has not responded (see below). I plan to attend the next school board meeting in person at the district administration building. Will I be arrested if I attend? ᴇᴄꜰ 1, ¶59. On December 6, 2023, the plaintiff forwarded to the defendant Lewis the email chain referred to above and stated "I'm following up on my email from the other day (see below) in order to

know if I will be arrested or not for attending the school board meetings in person.

Please let me know." ECF 1, ¶60.  On December 6, 2023, defendant Lewis responded

by email copying  Rich Lockhart of the Lawrence police department, the clerk of the

Board Alyse Donnell, and all of the Board members with the subject line "Permanent

Ban" stating:

---

**From:** Anthony Lewis <Anthony.Lewis@usd497.org>
**Date:** December 6, 2023 at 3:11:06 PM CST
**To:** spiehsjustin@gmail.com
**Cc:** Alyse.Donnell@usd497.org, Rich Lockhart <rlockhart@lkpd.org>, Office
Accountability <opa@lkpd.org>, Shannon Kimball <skimball@usd497.org>, GR
Gordon-Ross <gr.gordon-ross@usd497.org>, Kelly Jones
<kelly.jones@usd497.org>, ccaduebl@usd497.org, bbyers@usd497.org, Erica Hill
<ehill@usd497.org>, psmith@usd497.org
**Subject: Re: Permanent ban**

Justin,

Thank you for your patience as I was out of the office last week and getting caught
up on my emails.
You are correct; you are still not permitted to be on any USD 497 property as a
result of the no trespass issued to you by LKPD on October 26, 2021, on behalf of
USD 497.
You are still permitted to access our School Board meetings at the link
provided here. In addition, you are still permitted to provide public comment
by signing up in advance by emailing PublicComment@usd497.org by 6 p.m. on the
day of a board meeting, then you may participate via Webex video/phone
conferencing.
As a reminder, board meetings begin at 6:00 pm on the second and fourth Monday
of the month. I have attached a schedule of the meetings for your convenience. Feel
free to view the meeting agendas here.
Below are the Public Comment Procedures:
This is your time to share your opinions; however, public comment is not the
appropriate forum for making complaints about specific staff or students. If your
comments relate to complaints concerning students or staff, such complaints must
be addressed to district staff as provided under Board Policy KN (Complaints) or
Board Policy GAE (Personnel Complaints).
The board president or presiding officer of the meeting may direct that a public
comment request be redirected to staff in order to comply with board policy and/or
to protect the privacy of individual staff or students. For assistance in sharing a

---

complaint or concern with district staff, please inform the board clerk or other district staff member.

Topics discussed in public comments shall be germane to the business of the Board of Education. The board president or presiding officer will invite commentary on topics not included on the meeting agenda at the beginning of each meeting. Comments relating to agenda items are welcome after the board has had the opportunity to discuss the topic. **Please limit your comments to three (3) minutes.**

Comments or actions that are threatening to staff, the board, or others in attendance, including the use of foul language or any other behavior that is disruptive of the board meeting, will not be permitted during public comment. Additionally, the district assumes no responsibility and/or liability for the information shared during public commentary. The views expressed are solely those of the speakers and do not necessarily reflect the views of the Lawrence Public Schools.

I hope this helps!

Thank you!

**ECF 1, ¶61.**

None of the copied recipients of the email ever communicated any disagreements with the statements made by the defendant Lewis in his December 6, 2023, email. **ECF 1, ¶62.** Defendant Lewis is a policymaker for USD 497. **ECF 1, ¶63.** Each of the defendants are aware of the ban directed towards Dr. Spiehs. **ECF 1, ¶63.** The defendant Board had and has authority over the defendant Lewis to restrict or modify his policy decisions such as this ban directed to Dr. Spiehs. Despite having that authority, none of the defendants have done so. **ECF 1, ¶63.**

Churches rent USD 497 school locations on Sunday. **ECF 1, ¶¶ 147-149.** Because of the defendants' ban directed at Dr. Spiehs, Dr. Spiehs is prohibited from associating with those parishioners, listening to messages, or in participating in those religious exercises at those USD 497 church locations on Sundays. . **ECF 1, ¶¶ 147-149.**

**ARGUMENT**

I. **PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS FIRST AMENDMENT CLAIMS**

"Courts have consistently held that categorically banning individuals from open school board meetings is unreasonable and unconstitutional." *Mama Bears of Forsyth County v. McCall,* 642 F.Supp.3d 1338, 1362 (2022). "A school official's determination that an individual poses a threat to school safety is, without more, insufficient to justify such a broad ban." *Worthley v. School Committee of Gloucester*, 652 F.Supp.3d 204, 215 (2023) (granting injunctive relief as to trespass notice prohibiting Mr. Worthley not to appear on or enter the premises of school during school hours or at any school sponsored event or activity till end of school year).

In *Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2005), the plaintiff was prohibited under threat of trespass arrest from entering Vermont state court facilities. A "categorical ban on expressive speech singling out an individual does not even satisfy the lower threshold of reasonableness review." *Id.* at 549. In *Cyr v. Addison Rutland Supervisory Union*, 60 F.Supp.3d 536 (D.Vt. 2014), Mr. Cyr was prohibited for two years under trespass threat of arrest in entering school property. Mr. Cyr was consequently banned from attending school board meetings. The *Cyr* court held that the ban was not narrowly tailored to address the specific threat Mr. Cyr allegedly posed to the school principal. The *Cyr* court held that the trespass ban could have been limited to "school hours" or even posted a police officer at the public meetings allowing Mr. Cyr to attend.

Judge Story in *Mama Bears* further ruled that "singling out one individual, banning his (perhaps disfavored) speech, and essentially preventing him from

engaging in a form of civil discourse that is available to everyone else ... is unreasonable." (quoting *McBreairty v. Sch. Bd. of RSU 22*, 616 F.Supp.3d 79, 96 (D. Me. July 20, 2022)).  The government defendants cannot prohibit future expressive activity by Dr. Spiehs as a result of some purported past unlawful conduct such as a onetime occasion of not wearing a mask at a public function.  And to make matters worse there has been no mask requirement for individuals entering USD 497 property for almost two years. This is raw retaliatory censorship.  *See Polaris Amphitheater Concerts, Inc. v. City of Westerville,* 267 F.3d 503, 507 (6th Cir. 2001) ("where a law sets out primarily to arrest the future speech of a defendant as a result of his past conduct, it operates like a censor, and as such violates First Amendment protections against prior restraint of speech").

Judge Story cited *Stevens v. Sch. City of Hobart*, 2015 WL 4870789, at *14 (N.D. Ind. Aug. 6, 2015). The *Stevens* plaintiff resigned from his job at a defendant School City of Hobart after he was accused of child molestation by a former student. After his resignation, he was informed that he should not enter school property and if so would be considered trespass.  Yet Stevens expressed a desire to attend after-school hours School Board meetings and to attend school events. *Id*. at *2-5.  The *Stevens* court held in part that the ban "was not narrowly tailored to achieve the interest" of protecting students.  Instead, it foreclosed "a means of communication" and that the complete ban achieved order during school hours.

In *Brown v. City of Jacksonville*, 2006 WL 385085 (M.D.Fla. 2006) that court granted a motion for a preliminary injunction regarding an individual who had been

barred from attending City Council meetings for seven City Council cycles. Brown court noted that the plaintiff Brown "was effectively prohibited from attending or speaking at City Council meetings and City Council Committee meetings for almost three months." 2006 WL 385085, at *1. The ban was imposed because Mr. Brown had not observed the rules of the Council when making his remarks at a Council meeting.

The *Brown* court rejected the idea that Mr. Brown could still communicate through alternative means.  If the prohibitions on future expressive activity of seven consecutive cycles of meetings (three months) in *Brown*,  for two years as in *Cyr,* and a ban of an indefinite period in *Huminski* violate the First Amendment. then it follows inexorably that a two year and counting permanent ban directed to Dr. Spiehs which suppresses his future expressive activity must also be invalidated.

The banning of Dr. Spiehs is an unconstitutional censorship on free speech and assembly, as well as freedom of religion. Barring Dr. Spiehs from attending or addressing the School Board at open meetings during Public Comments or attending church services is functionally a prior restraint, which is presumptively unconstitutional.  *Neb. Press Assoc. v. Stuart*, 427 U.S. 539, 592 (1976).

## II. THE REMAINING INJUNCTION FACTORS FAVOR THE PLAINTIFF

Where the government is the defendant, these remaining factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Public interest favors plaintiff's assertion of his First Amendment rights. *See Elam Constr., Inc. v. Regional Transp. Dist.*, 129 F.3d 1343, 1347 (10th Cir.1997).

**Conclusion**

Why any ban – much less a permanent ban – for not wearing a mask to a public event two years ago?  But at this stage in the proceedings, the Court need not consider whether Superintendent Lewis possessed any authority under USD 497 policy (which he did not) to impose this permanent ban upon Dr. Spiehs:

> even if the public participation policy did purport to give the Board the authority to enact a permanent ban, it would not likely be constitutional, at least in this circumstance. The Court need not determine whether this ban is a time, place, and manner restriction or a content-based restriction, because it would be unconstitutional under either framework.

*Mama Bears at* 1362.  The Court should permanently enjoin the defendant Superintendent's and the Board's permanent ban of Dr. Spiehs from USD 497 property and for such relief as the Court deems appropriate.  If not then a preliminary injunction should issue.

<u>/s/Linus L. Baker</u>
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:          913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff