IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Justin Spiehs | Case No.  5:23-cv-04121-TC-GEB |
| Plaintiff | |
| v. | PLAINTIFFS' OPPOSITION TO ANTHONY LEWIS MOTION TO DISMISS |
| Anthony Lewis, in his individual capacity et al | |
| Defendants | |

**ONGOING / REPEAT VIOLATIONS**

Defendant Lewis argues statute of limitations. ECF 29 Lewis Mem p.5. Defendant Lewis' permanent ban is an ongoing violation of Dr. Spiehs' civil rights as he labors under an ongoing and permanent ban which is continuing in nature. ECF 1 Complaint ¶ 61 ("still not permitted to be on any USD 497 property").  Each day Dr. Spiehs is banned constitutes a new injury and a continuing unlawful act. The continuing wrong doctrine operates to extend the statute of limitations where there is a continuous series of unlawful acts.  *Herrera v. City of Espanola*, 32 F.4th 980 (10th Cir. 2022); *Parkhurst v. Lambert*, 264 F. App'x 748, 749 (10th Cir. 2008) ("Assuming the continuing violation doctrine applies to § 1983 claims, the doctrine is triggered by continual unlawful acts…"). The subsequent request by Dr. Spiehs and the December 6, 2023, email response from defendant Lewis banning Dr. Spiehs could also be considered a separate or repeated violation.  *See Herrera* ("each denial of a request for water service was a separate, unlawful act by an entity" and "each new refusal to provide water service constitutes a discrete violation and triggers a new clock for filing the action").  Defendant's argument about injury and standing is equally misplaced.  Defendant Lewis claims he is not personally responsible for USD

1

497 policies which is irrelevant. Defendant Lewis is his own policy maker and is personally responsible for his actions. Defendant Lewis created his own *de facto* edict applicable to Dr. Spiehs. Dr. Spiehs' complaint is based upon what defendant Lewis has specifically done to and communicated with Dr. Spiehs – aside from any so-called written BCBI policy. Defendant Lewis has declared ipso facto Dr. Spiehs cannot set foot on USD 497 property at any time – irrespective of whether it is during school hours or in any violation of any so-called written policy of the Board. The idea that Dr. Lewis is somehow powerless to rescind his own *ad hoc* no-trespass edict is nonsensical – just as defendant Lewis made his decree he can surely retract it. It does not require any modification of any "BCBI" written policy.

NO QUALIFIED IMMUNITY

Defendant Lewis doesn't actually argue qualified immunity.[1]  Instead, he argues no rights of Dr. Spiehs were violated. Nothing in defendant Lewis' argument addresses the specific actions of Dr. Lewis or prior case law that would immunize him from liability. Defendant misconstrues the legal analysis connecting students to church property – vs church property unrelated to student activities. Instead, he argues that no Constitutional right was violated. Nothing in that case law relieves defendant Lewis of his burden. *See Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010) ("The burden of establishing entitlement to qualified immunity is on [the defendant]"). "Qualified immunity is not a talismanic phrase that relieves

---

[1] Defendant Lewis argues legislative immunity which is irrelevant. Defendant Lewis' liability is based upon his own personal involvement regarding his personal decree that Dr. Spiehs cannot enter upon USD 497 property.

Defendants of their burden to show that their actions did not violate Plaintiff's clearly established constitutional rights." *Miller v. Goggin*, No. CV 22-3329-KSM, 2023 WL 3294832, at *4 (E.D. Pa. May 5, 2023).  In asserting this defense, defendant Lewis "fails to grapple with the facts and claims alleged in Plaintiff's Complaint." *Id.* "They do not highlight particular claims against them and analyze the pleadings nor do they conduct any of the other analysis necessary to establish qualified immunity.  Instead, they just use the phrase qualified immunity and cross their fingers in the hopes that the Court will dismiss the claims against them." *Id.*  Similarly, defendant Lewis asserts no rights were violated which does not make any argument going to qualified immunity or sustain his burden.

**A ONE-TIME MASK VIOLATION AT A MEETING NEVER RAISED A STUDENT SAFETY ISSUE**

Defendants claim Dr. Spiehs "disrupted" a meeting but that is not what the Complaint states (ECF 1):

| |
|---|
| 42    On or about July 27, 2021 USD 497 instituted a masking requirement for persons on USD 497 property.  The requirement exempted person  on USD 497 property when "outside, while eating, or during designated mask breaks."<br>43    Plaintiff Dr. Spiehs and his female friend Sue Herynk appeared at public presentation located at Lawrence High School, which is a part of USD 497 property, on October 26, 2021. Neither Dr. Spiehs nor Mrs. Herynk were wearing a mask. Dr. Spiehs did not commit violence against anyone nor had he threatened to do so at the October 26, 2021, event.<br>44    Defendant Lewis instructed Lawrence police to remove Dr. Spiehs and Mrs. Herynk from the High School. Dr. Spiehs possessed a doctor's note medically stating Dr. Spiehs should not wear a mask which defendant Lewis and the police were aware of.<br>45    Defendant Lewis then instructed Lawrence Kansas police that Dr. Spiehs was being given a lifetime permanent ban not only from Lawrence High School but from all USD 497 property because Plaintiff did not wear a mask.<br>46    Dr. Spiehs' friend who also appeared at the meeting did not receive any trespass warning or any ban on appearing on USD 497 property.<br>*** |

| 47 | 54 Dr. Spiehs presents no public safety concern to any member of the public regarding his onetime refusal to wear a mask in October 2021. |
| 48 | 55 The ban prohibited Dr. Spiehs from redressing government, his speech, and from associating with those personally attending those events and meetings. |
| 49 | 56 USD 497 ended its mask mandate on or about March 7, 2022. |

Refusal to wear a mask one time at a public meeting two years ago, according to defendant Lewis, justifies a permanent life-time ban from all USD 497 property. The cases cited by defendant Lewis concern student safety. Defendant Lewis' ban was not student safety minded at all – he did not ban Dr. Spiehs from attending USD 497 student activities occurring at non-USD 497 locations. Defendant Lewis' mask reasoning has nothing to do with safety of USD 497 students. Not wearing a mask one time at a meeting had – and has – nothing to do with student safety. Defendant Lewis comes up with a *post hac* reason (never articulated by defendant Lewis in any prior communications) that Dr. Spiehs pleading no contest to at a vaccine clinic charge justifies his lifetime ban but it doesn't. Does defendant Lewis fear that Dr. Spiehs will not wear a mask to a meeting? Mask requirements have long been terminated. "Fear of serious injury cannot alone justify suppression of free speech and assembly.... To justify suppression of free speech there must be reasonable ground to fear that serious evil will result if free speech is practiced." *United States v. National Treasury Employees Union,* 513 U.S. 454, 475 (1995). "The First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of assembly simply because its exercise may be annoying to some people." *Coates v. City of Cincinnati,* 402 U.S. 611, 615 (1971). And defendant Spiehs' ban

encompasses far more than being on property during school hours – or for that matter where students are located.

### USD 497 PROPERTY HAS DIFFERENT FORUMS

Dr. Spiehs is not seeking unlimited access to any USD 497 school.   But defendant Lewis has banned Dr. Spiehs from all access to any USD 497 property irrespective of student presence or USD 497 use.   Defendants muddle the forum analysis.   Defendant myopically characterize every square foot of USD 497 property as a non-public or limited public forum which is factually incorrect.   Generally a "school" is generally considered a nonpublic forum, as it is a property that is not traditionally open to the public for communication.   But not all USD 497 property is a school.   For example, school baseball or football fields during non-school hours on Sunday are open public forums.   A school playground during the evenings or on the weekends is an open public forum.   Of course, churches operating on Sundays on USD 497 property are open and have nothing to do with student safety.   A parking lot for USD 497 maintenance facility is an open public forum. Defendant Lewis' overbroad invocation of "school" and "school property" does not analyze the many types of forums that exist on USD 497 property.   Where there is no clear and present danger, speech restrictions imposed on persons on government-owned property are analyzed under a forum-based approach that divides government property into three categories: a public forum, the designated public forum, and the nonpublic forum.   There can be multiple forums arising on USD 497 property. *See Summum v. Callaghan*, 130 F.3d 906, 913 (10th Cir. 1997) (First Amendment violation centers on three questions: (1)

whether speech is protected, (2) the type of forum, and (3) the justification for restricting speech). *Summum* recognized that the terms "designated public forum" and "limited public forum" are not the same. *Summum* at n. 14. In a traditional public forum, familiar First Amendment rules apply: "any restriction based on the content of … speech must satisfy strict scrutiny." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009). In a public forum, almost all speech restrictions offend the First Amendment. *See Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (First Amendment shielded Westboro Baptist members for offensive speech at funeral). *See Rosenberger v. Rector & Visitors of Univ. of Virginia,* 515 U.S. 819, 829-30 (1995) (finding a denial of access to a group to a traditional public forum constituted impermissible viewpoint discrimination and stating "when the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant"); *Universal Amusement Co. v. Vance,* 587 F.2d 159, 165 (5th Cir. 1978) ("prior restraint of expression comes before [the] court with a heavy presumption against its constitutional validity").

And even though others (Herynk) did not wear a mask, defendant Lewis imposed his ban solely against Dr. Spiehs. "Defendants have not suggested a legitimate basis upon which [Defendant] might have differentiated between Plaintiff and other audience members who were also violating Quorum Court rules." *Schnekloth v. Deakins*, No. 21-CV-5131 2022 WL 1050380 at *7 (W.D. Ark. 4/7/2022) (denying qualified immunity).

THE LAW IS CLEARLY ESTABLISHED

"Courts have consistently held that categorically banning individuals from open school board meetings is unreasonable and unconstitutional." *Mama Bears of Forsyth County v. McCall,* 642 F.Supp.3d 1338, 1362 (2022).

- ***Worthley v. School Committee of Gloucester*, 652 F.Supp.3d 204, 215 (2023)** ("school official's determination that an individual poses a threat to school safety is, without more, insufficient to justify such a broad ban" and granting injunctive relief as to trespass notice prohibiting Mr. Worthley not to appear on or enter the premises of school during school hours or at any school sponsored event or activity till end of school year).

- ***Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2005)** The plaintiff was prohibited under threat of trespass arrest from entering Vermont state court facilities. A "categorical ban on expressive speech singling out an individual does not even satisfy the lower threshold of reasonableness review." *Id.* at 549.

- ***Cyr v. Addison Rutland Supervisory Union*, 60 F.Supp.3d 536 (D.Vt. 2014)** Mr. Cyr was prohibited for two years under trespass threat of arrest in entering school property. Mr. Cyr was consequently banned from attending school board meetings. The *Cyr* court held that the ban was not narrowly tailored to address the specific threat Mr. Cyr allegedly posed to the school principal. The *Cyr* court held that the trespass ban could have been limited to "school hours" or even posted a police officer at the public meetings allowing Mr. Cyr to attend.

- ***Mama Bears*** "Singling out one individual, banning his (perhaps disfavored) speech, and essentially preventing him from engaging in a form of civil discourse that is available to everyone else ... is unreasonable." (quoting *McBrearity v. Sch. Bd. of RSU 22*, 616 F.Supp.3d 79, 96 (D. Me. July 20, 2022)).

- ***Polaris Amphitheater Concerts, Inc. v. City of Westerville,* 267 F.3d 503, 507 (6th Cir. 2001)** "Where a law sets out primarily to arrest the future speech of a defendant as a result of his past conduct, it operates like a censor, and as such violates First Amendment protections against prior restraint of speech").

- ***Stevens v. Sch. City of Hobart*, 2015 WL 4870789, at \*14 (N.D. Ind. Aug. 6, 2015)**   The *Stevens* plaintiff resigned from his job at a defendant School City of Hobart after he was accused of child molestation by a former student. After his resignation, he was informed that he should not enter school property and if so would be considered trespass.  Yet Stevens expressed a desire to attend after-school hours School Board meetings and to attend school events. *Id.* at \*2-5.  The *Stevens* court held in part that the ban "was not narrowly tailored to achieve the interest" of protecting students.  Instead, it foreclosed "a means of communication" and that the complete ban achieved order during school hours.

- ***Brown v. City of Jacksonville*, 2006 WL 385085 (M.D.Fla. 2006)** Court granted a motion for a preliminary injunction regarding an individual who had been barred from attending City Council meetings for seven City Council cycles. Brown court noted that the plaintiff Brown "was effectively prohibited from attending or speaking at City Council meetings and City Council Committee meetings for almost

three months." 2006 WL 385085, at *1. The ban was imposed because Mr. Brown had not observed the rules of the Council when making his remarks at a Council meeting.

The banning of Dr. Spiehs is an unconstitutional censorship on free speech and assembly, as well as freedom of religion. Barring Dr. Spiehs from attending or addressing the School Board at open meetings during Public Comments or attending church services is functionally a prior restraint, which is presumptively unconstitutional. *Neb. Press Assoc. v. Stuart*, 427 U.S. 539, 592 (1976).

### WHAT AUTHORIZES OR LIMITS DEFENDANT LEWIS' ARBITRARY AUTHORITY TO BAN?

Defendant Lewis brings nothing before the Court in which he claims he is authorized to permanently ban anyone from USD 497 property. Defendant Lewis invokes extraneous documents he says are "Board policies." Nothing in Exs. 1-4 refers to masks or any purported banning authority. The exhibits do not even facially refer to USD 497. The exhibits appear to refer to open meetings or making administrative complaints. Remarkably, the defendant Lewis does not point to any language in those documents that give him the authority to permanently ban any person from USD 497 property. "Even if the public participation policy did purport to give [defendant Lewis] the authority to enact a permanent ban, it would not likely be constitutional." *Mama Bears* at 1362.

"It is self-evident that an indeterminate prohibition carries with it the opportunity for abuse, especially where it has received a virtually open-ended interpretation." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1891 (2018). To "pass constitutional muster," something must exist to "contain adequate standards to guide

the official's decision." *Wag More Dogs Liab. Corp. v. Cozart*, 680 F.3d 359, 372 (4th Cir. 2012). Put another way, whatever exists (which so far is unidentified) regarding the Superintendent's authority it cannot give him unbridled discretion. *See Summum v. Callaghan*, at 919; *Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation,* 322 F.3d 1298, 1310-11 (11th Cir. 2003); *DeBoer v. Village of Oak Park*, 267 F.3d 558, 572-73 (7th Cir. 2001); *Lewis v. Wilson,* 253 F.3d 1077, 1079 (8th Cir. 2001).

Defendant Lewis bears the burden to demonstrate his actions are Constitutional. See *Mama Bears of Forsyth County at* 1362 (citing *Matal v. Tam*, 582 U.S. 218, 137 S. Ct. 1744, 1763 (2017)). "However, in First Amendment cases the initial burden is flipped." *Id.* "Instead, the government bears the burden of proving that the law is constitutional and, as a result, the plaintiff must be deemed likely to prevail if the government fails to show the constitutionality of the law." *Id. See New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2130, 213 L.Ed.2d 387 (2022) (government "bears the burden of proving the constitutionality of its actions" when it restricts speech). Defendant Lewis bears the burden to show his actions permanently banning Dr. Spiehs from USD 497 property because of not wearing a mask two years ago are Constitutional. *See Kennedy v. Bremerton School District*, 142 S. Ct. 2407, 2426 (2022).

## RELIGION

Defendant Lewis makes a passing reference to religion claiming the permanent ban from USD 497 is "hypothetical." Defendant Lewis' ban is not hypothetical and

prohibits Dr. Spiehs from currently exercising religion, as others are allowed to do, on USD 497 property leased to churches;

> 149 Churches rent USD 497 school locations on Sunday and because of the defendants' ban directed at Dr. Spiehs, Dr. Spiehs is prohibited from associating with those parishioners, listening to messages, or in participating in those religious exercises.

**WEBEX**

Mere speech got Dr. Spiehs silenced – then removed – from each of the WebEx connections. Apparently offensive speech is equated with disruptive behavior. "Government cannot regulate speech by relabeling it as conduct." *Otto v. City of Boca Raton*, 981 F.3d 854, 865 (11th Cir. 2020) (citing *Texas v. Johnson*, 491 U.S. 397, 414 (1989)). "Speech cannot be … punished or banned, simply because it might offend a [crowd]." *Forsyth County. v. Nationalist Movement*, 505 U.S. 123, 134-35 (1992). The "absence of express standards renders it difficult to differentiate between a legitimate denial of access and an illegitimate abuse of censorial power." *Child Evangelism Fellowship of MD, Inc. v. Montgomery Cnty. Pub. Sch.*, 457 F.3d 376, 386 (4th Cir. 2006). Defendant Lewis' *post hac* claims of disruption or other reasons as justification for his permanent ban. Indeed, among "the dangers posed by unbridled discretion" is the censor's "ability to hide unconstitutional viewpoint discrimination." *Id.*

The Complaint sets out viewpoint discrimination, retaliation, and equal protection violations based upon defendant Lewis' actions from which a jury could make that determination:

> 87 On February 6, 2022, Dr. Spiehs, and two other individuals were protesting at

11

the corner of 110 McDonald Drive, where Lawrence school district headquarters are located. One of the signs included defendant Lewis' name, his salary and the letters 'WTF.'"

88. Defendant Lewis was driving a car at that location. Defendant Lewis appeared to direct his vehicle towards the protestors including Dr. Spiehs causing Dr. Spiehs concern that he may be struck by defendant Lewis' vehicle.

89. Sue Herynk, one of the protestors stated that defendant Lewis' car swerved toward the group when they were standing at the edge of the intersection and came within three or four feet of Dr. Spiehs.

***

110 Dr. Spiehs was provided a WebEx connection. Dr. Spiehs attempted to read a story about a character named "Lewis Anthony." Defendant Lewis gestured to the defendant Board President with his hand indicating that Dr. Spiehs should be silenced or disconnected. The Board president instructed the WebEx operator to terminate Dr. Spiehs' WebEx connection.

Mentioning school staff or pseudo-names is not a basis to censure Dr. Spiehs:

130 The Board and USD 497 administrators often discuss USD 497 employees outside of such executive session. In fact, every USD 497 open meeting includes a period for recognitions during which it acknowledges and recognizes specific named USD 497 staff and students for accomplishments that they have achieved.

131. The superintendent and other administrators' monthly reports given at these open meetings often involve discussing specific staff members and their job performance.

## Conclusion

The plaintiff has stated Equal Protection, First Amendment Association, retaliation, and Free Speech claims personally against defendant Lewis of which defendant Lewis is not immune.  The Court should deny the defendant Anthony Lewis' motion to dismiss.

/s/Linus L. Baker
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:           913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

Certificate of Service
The above was provided notice to all parties entitled to such notice pursuant to the Court's electronic filing system.

/s/Linus L. Baker
Attorney for the plaintiff