IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Justin Spiehs | Case No.   5:23-cv-04121-TC-GEB |
| Plaintiff | |
| v. | PLAINTIFFS' OPPOSITION TO ERICA HILL MOTION TO DISMISS |
| Anthony Lewis, in his individual capacity et al | |
| Defendants | |

**PERSONAL ACTIONS OF DEFENDANT HILL**

The 1983 Counts 1-4 apply to the defendant Hill of which the plaintiff Dr. Spiehs seeks damages. Defendant Hill claims that plaintiff failed to allege that defendant Hill has "personally taken any action or inaction." ECF 27 p.15. That contention is made up from whole cloth and is repeatedly refuted many times over by the allegations contained in the Complaint. Her actions of silencing and ejecting Dr. Spiehs from the meetings is conceded in Hills' memorandum: Hill's counsel specifically references dates of February 14, 2022, April 11, 2022, and April 25, 2022 in her memorandum regarding her and Dr. Spiehs' participation in the school board's open meetings via a WebEx connection. ECF 27, ¶ 8 and fn.10. Hill's defense counsel further claims Hill's suppression of Dr. Spiehs' speech was justified invoking a "KN" policy (defendants' Ex. 3). ECF 27 p.15.[1] Plaintiff has briefed defendant Anthony

---

[1] Hill erroneously claims that the plaintiff "acknowledged" in the Complaint the existence of this "KN" policy or that it purportedly "provides the procedure for addressing 'complaints.'" First, "a" procedure is not "the" procedure. Second, if KN is a carve out of speech permitted at open meetings as alleged by defense counsel, it is entirely viewpoint discriminatory. "Complaints" are solely negative speech about a topic. The Board's website not only does not define what a "complaint" means, it then only *suggests* this vague procedure ("Before participating in public comment to share a complaint, the board *requests* that public commenters follow the complaint procedures"). "Requesting" is asking. It is a suggestion – not a commandment.

Lewis' motion to dismiss.  The Complaint connects defendant Hill's participation in the permanent banning of Dr. Spiehs from all property, Dr. Spiehs' relegation to WebEx connection as to a Board open meeting, and Dr. Spiehs' banning from the WebEx connection to the Board's open meetings.  The Complaint connects those actions to the defendant Hill directly and through the doctrines of ratification. ECF 1 ¶64-65, 231.

Defendant Hill formerly presided over the Board's open meetings while Dr. Spiehs was speaking during a WebEx connection. ECF 1 ¶ 13.  Hill was copied on defendant Lewis' December 6, 2023, email ban. Id. ¶ 61.  Defendant Hill stopped Dr. Spiehs from speaking because he merely mentioned defendant Lewis by name.  Hill told him Dr. Spiehs could not even mention school staff.  ¶ 96. Defendant Hill instructed the WebEx operator to disconnect Dr. Spiehs' WebEx connection. ¶ 98. Hill's actions were individual and directed towards Dr. Spiehs in suppressing Dr. Spiehs protected speech during the open meetings. *Id.* ¶ 134; ¶161 ("have suppressed Dr. Spiehs's speech because of his prior and present viewpoints.  The manner in which defendants apply whatever speaking policies defendants think apply does ban certain ideas—viewpoints about staff that defendant Erica Hill thought were embarrassing, did not like, or was criticism of school officials – but not complimentary speech about the same topics and individuals").  Defendant Hill stopped Dr. Spiehs' speech because she thought he was talking about something "private" and then had him removed from the open meeting.  ¶214; 216 (defendant Hill "applied the "complaints about specific staff or students" to mean that Dr. Spiehs could not speak negatively about

named staff or students. They similarly applied it to permit positive statements about named staff and students. Commissioner President Hill said she referenced "privacy" as prohibiting Dr. Spiehs from discussing at all USD 497 staff or students at all including the salary of defendant Lewis"); ¶ 218 (exceeded her authority provided in the Board policies); ¶ 219 (stopped Dr. Spiehs' speech and ejected him from open meeting); ¶¶ 220-222 (defendant Hill engaged in viewpoint discrimination by permitting compliments for school employees but not Dr. Spiehs' negative speech or criticizing school personnel).

**NO FACTS DEMONSTRATE DR. SPIEHS DISRUPTED ANY SCHOOL BOARD MEETING**

Qualified immunity is defendant Hill's burden. The law imposed upon defendant Hill was clearly established.  Under Supreme Court and Tenth Circuit precedent, citizens have – and have had – a clearly established constitutional right not to be discriminated against based on their viewpoints unless such discrimination is necessary to further a compelling governmental interest.  And selectively closing school board meetings to Dr. Spiehs has long been held to be a Constitutional violation. *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 281 (1984) (closing one segment of the public but remaining open for participation by other public members).  Dr. Spiehs was never disruptive, threatening, and did nothing that was deemed obstructing at any board meeting. *See Gerlich v. Leath,* 861 F.3d 697, 709 (8th Cir. 2017) ("plaintiffs' right not to be subjected to viewpoint discrimination while speaking in a university's limited public forum was thus clearly established at the times in question"); *McNeally v. HomeTown Bank*, No. 21-cv-2614 (ECT/DTS), 2022

WL 2220922, at *10 (D. Minn. June 21, 2022) ("Binding and persuasive authorities show that the right not to be excluded from a public board meeting in retaliation for First Amendment activities is clearly established").

**WEBEX**

Not only is Dr. Spiehs permanently banned from in person attendance at Board meetings he is also permanently banished to a virtual connection – and even that with no guarantee.  Defendant Hill – along with the rest of the defendants – don't dispute that Dr. Spiehs was further placed in open meeting time out in limiting him to only a WebEx virtual connection.  And then Dr. Spiehs was banned from that connection for a period of time.  Webex was retaliatory and was not an alternative forum. *See McBreairty v School Board of RSU 22,* 2022 WL 2835458 (D. Me. 2022); *McNeally v. HomeTown Bank,* 2022 WL 2220922 (D. Minn. 2022) (ban by Superintendent); *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 549–50 (D. Vt. 2014) (telephonic participation option was inadequate alternative); *Wilson v. N. E. Ind. Sch. Dist.*, 5:14-CV-140-RP, 2015 WL 13716013, at *4–6 & n.2 (W.D. Tex. Sept. 30, 2015) ("permission to write the board or send a representative to the board meetings on her behalf" was inadequate alternative to in-person attendance); *Teufel v. Princeton City Sch. Dist. Bd. of Educ.*, No. 1:12-cv-355, 2013 WL 143808, at *14 (S.D. Ohio Jan. 11, 2013) (holding that alternative channels of communication with board members outside of public meeting were inadequate alternatives).

**BURDEN ON HILL TO PROVE EACH OF HER REASONS WAS CONSTITUTIONAL AND HILL'S STATE OF MIND CANNOT BE DETERMINED BY COUNSEL'S FACTUAL ASSERTIONS**

Plaintiff's speech was protected. Because defendant Hill admits that she silenced Dr. Spiehs protected speech, the burden is upon her to prove, by a preponderance of the evidence, that each reason for her suppression of Dr. Spiehs' was Constitutional. Dr. Spiehs is not required to prove the defendant Hill acted with discriminatory intent. Rather, it is the defendant Hill's burden to prove she did not act with any discriminatory intent. Rather, strict scrutiny requires a defendant to prove by a preponderance of the evidence that defendant Hill's suppression of Dr. Spiehs' protected speech was constitutional under the First Amendment of the U.S. Constitution.[2] According to the verified Complaint, it alleges what defendant Hill did and why – she had discriminatory purpose against Dr. Spiehs and his viewpoints. ECF 1 ¶¶ 143, 145, 173, 181-183. Defense counsel attempts to controvert these facts and asserts a different purpose by Hill. The allegations of the Complaint cannot be controverted at a motion to dismiss stage. So Defense counsel attempts to interject

---

[2] *Doe v. City of Albuquerque*, 667 F.3d 1111, 1135 (10th Cir. 2012) (When "a law infringes on the exercise of First Amendment rights, its proponent bears the burden of establishing its constitutionality"); *Brewer v. City of Albuquerque*, 18 F.4th 1205, 1219 (10th Cir. 2021) ("Plaintiffs carried their threshold burden of showing their speech and conduct are protected by the First Amendment"); *Lim v. City of Long Beach*, 217 F.3d 1050, 1054 n. 4 (9th Cir.2000) ("plaintiff bears the initial burden of proving that speech was restricted by the governmental action in question"); *McCullen v. Coakley*, 573 U.S. 464, 134 S.Ct. 2518, 2540 (2014) ("To meet the requirement of narrow tailoring, the government must demonstrate [that the speech restriction meets the relevant requirements]."; *Mama Bears of Forsyth County v. McCall*, 642 F.Supp.3d 1338  (2022) (burden on defendant)

extraneous factual assertions particularly about defendant Hill's state of mind and her purpose which is not allowed.  Defense counsel connects extraneous factual dots through Def Exs. 1-4 – and then factually claims defendant Hill only had those policies in her mind when she suppressed Dr. Spiehs' speech and removed him from each meeting. But those are bare assertions – literally rank speculation.  Irrespective of whether any of these policies exist or apply, a jury should decide each reason why defendant Hill did what she did.  And a jury certainly does not have to believe what defense counsel asserts as defendant Hill's state of mind was at that time.  Even at summary judgment a jury could determine those reasons (never stated at a meeting referencing any policy) were pretextual and *post hac.* It would be evidence of "shifting rationales." *Crowe v. ADT Servs., Inc.,* 649 F.3d 1189, 1197 (10th Cir. 2011).  "A plaintiff can show pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence…" *Plotke v. White*, 405 F.3d 1092, 1102 (10th Cir. 2005). Post hoc rationalizations are evidence of pretextual viewpoint discrimination. *See Am. Freedom Defense Initiative v. Wash. Metro. Area Transit Auth.,* 901 F.3d 356, 366 (D.C. Cir. 2018).[3]

---

[3] You may consider any reason offered by the defendants as to why the plaintiff's speech was suppressed at the public meeting as pretextual in order to hide a possible actual discriminatory reason or reasons the speech was suppressed by the defendant Hill.
**Source:**
*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)
*St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993)

### NO QUALIFIED IMMUNITY

Defendant Hill recites the mantra of qualified immunity and spends a modicum of a few sentences with no factual analysis. Defendant Hill says there is no clearly established law – but her words are not self-proving. This isn't a close call. Judge Teeter in *Gilmore* denied the defendant Beveridge's motion for qualified immunity.   For all the reasons stated in the opposition brief to defendant Lewis' motion the same arguments apply here.   *See Miller v. Goggin*, No. CV 22-3329-KSM, 2023 WL 3294832, at *4 (E.D. Pa. May 5, 2023) ("not a talismanic phrase that relieves Defendants of their burden").

### THE POLICIES DON'T JUSTIFY DR. SPIEHS' SPEECH, ARE VIEWPOINT DISCRIMINATORY AND VAGUE

Defense counsel defends Hill's actions stating that Hill could bar Dr. Spiehs from even naming names – or even mentioning the Board Superintendent's salary – at an open meeting.   Of course, no such prohibitory language exists in any of the policies.   Once the Commission has set out a limited public forum, it must adhere to its own rules to the extent they exist: it "must respect the lawful boundaries it has itself set." *Id.   Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).   To this end, the government "may not exclude speech where its distinction is not reasonable in light of the purpose served by the forum, nor may it discriminate against speech on the basis of its viewpoint." *Id.*

---

*Wright v. West,* 505 U.S. 277, 296 (1992)

**POLICIES DON'T AUTHORIZE A PRESIDING COMMISSIONER TO BOOT PEOPLE FROM OPEN MEETINGS BECAUSE OF A PURPORTED SPEECH CODE VIOLATION**

Defendant Hill does not claim any policy authority to remove a citizen from an open meeting because of a speaker's protected speech (no fighting words) yet otherwise violates her speech code.  In terms of WebEx defendant Hill terminated Dr. Spiehs' connection.  That action is retaliatory and over-the-top.  Putting aside the illegitimacy of the speech code, to purportedly keep order all one had to do was mute Dr. Spiehs on WebEx allowing him to listen to the meeting.  But instead defendant Hill punished Dr. Spiehs by completely ejecting him out of the open meeting which is not narrowly tailored or the least restrictive means.

**POLICIES DON'T AUTHORIZE PRESIDING COMMISSIONER TO BAN CITIZENS FROM OPEN MEETINGS**

The lawyer Jeffrey Heiman got his instructions most likely from defendant Hill as the presiding Commissioner. ECF 1 ¶¶ 113-119.  There is nothing, as admitted by attorney Heiman, that authorizes this action.

**POLICIES DON'T LIMIT ANY SPEECH AT OPEN MEETINGS**

So examine the policies.  Ex. 1 is the BCBI Public Participation Policy but its effective date is unknown. It sets out no subject or topical limitations. To that extent it is open mike night – any topic is permitted.  Ex. 2 purports to be a BCBI policy effective June 13, 2022.  It does not have a topical limitation but then refers to "rules for public comment" which are available from the clerk.  Plaintiffs include those

additional *suggestions*. ECF 1 ¶ 212. It also refers to "complaints" – which mean negative comments – and then frames that as a suggestion – a "request."[4]

The defendants don't identify what those other "rules" are and didn't attach them to their motion – another reason to deny their motions. Exhibits 3 & 4 concern "Complaints" but do not refer to open meetings or topics that can be discussed at Board open meetings. But according to defense counsel, he says Policy KN was what defendant Hill was relying upon. Even taking that bare assertion as fact it demonstrates an admission that defendant Hill's actions were viewpoint discrimination based.

### BOARD POLICY KN HAS NO APPLICATION AND IF IT DOES IT IS WHOLLY VIEWPOINT DISCRIMINATION

Defense counsel points to Board Policy KN titled "General Complaint" as justification for all of defendant Hill's actions. Even assuming that this is true, it is a particularly jagged two-edged sword defense counsel has decided to fall upon. KN does not prohibit any topic from discussion. Rather it purports to focus on negative comments on a topic: it only addresses critical speech – negative speech – about certain persons and topics. KN calls it "complaint" – a completely amorphous word.[5] Prohibiting speakers from mentioning school personnel in a forum otherwise devoted

---

[4] The restrictions are simply suggestions – "the board asks" and "please avoid making…." According to defense counsel, defendant Hill interprets them as mandatory as she repeatedly stopped Dr. Spiehs from naming names or the salary of defendant Lewis. ECF 1 ¶¶ 214-216.

[5] Complaints are not defined. It could mean: (1) expression of grief, pain, or dissatisfaction; (2) something that is the cause or subject of protest or outcry; (3) a bodily ailment or disease; (4) a formal allegation against a party. Merriam Webster Online Dictionary  https://www.merriam-webster.com/dictionary/complaint

to discussing school and education matters discriminates based on viewpoint by silencing those who believe the school's problems trace back to personnel is classic viewpoint discrimination.  It undermines the forum's purpose. The "debate is skewed in multiple ways." *Rosenberger*, 515 U.S. at 832.   Clearly if KN policy has any application as now baldly asserted in their motions, the "government may not discriminate against speech based on the ideas or opinions it conveys." *Iancu v. Brunetti,* 139 S. Ct. 2294, 2299 (2019).   The KN policy of purportedly banning speakers from mentioning school personnel in a negative fashion does precisely that. It prohibits people from voicing their opinion that specific government officials bear the blame for failing schools or other problems in the district.    Any    of    those definitions connotes negative speech on a subject.   KN bars all "complaints" – irrespective of whether names are used in the "complaint."

Who knows how defendants will attempt to further parse KN.  Perhaps defendants will claim "complaints" are permitted (which KN categorically prohibits) as long as the speaker does not name a name.[6]   This argument "reflects an insupportable assumption that all debate is bipolar." *Rosenberger*, 515 U.S. at 831. That assumption contravenes the Supreme Cout's decades old "understanding of the complex and multifaceted nature of public discourse." *Id.*  Debate on public issues does not always—or even often—boil down to whether one is for or against a particular proposal. And because of that, the "First Amendment's viewpoint

---

[6] Even Dr. Spiehs tried that avenue using a made up fictional character which defendant Hill still prohibited.  ECF 1 ¶110-112.

neutrality principle protects more than the right to identify with a particular side." *Matal v. Tam*, 582 U.S. 218, 249 (2017). "It protects the right to create and present arguments for particular positions *in particular ways*, as the speaker chooses." *Id.*

**KN PROHIBITS NEGATIVE SPEECH ABOUT A SUBJECT WHILE ALLOWING POSITIVE SPEECH ON THE SUBJECT | CLASSIC VIEWPOINT DISCRIMINATION**

Going down defense counsel's rabbit hole of claiming defendant Hill was actually thinking of KN policy, the newest KN policy (Ex 4) uses the word "complaint" and also does not define it.  It acknowledges that a "complaint" may be about an "individual" and the following subjects:

| | |
|---|---|
| *Discrimination on the Basis of Sex* | *About Facilities and Services* |
| *Discriminatory Harassment* | *About Personnel* |
| *About Policy* | *About Emergency Safety Intervention Use* |
| *About Curriculum* | |
| *About Instructional Materials* | *About School Rules* |

Notice that it does not purport to address talking about those subjects in every context.  Rather, it is only those subjects connected to a "complaint."  In fact it would be quite remarkable that those subjects would be eliminated when the purpose of the BCBI policy is to "have something to bring to the attention of the board." Ex. 1. Defendant Hill permitted defendant Lewis' pastor to speak positive about Anthony Lewis and directly to defendant Lewis. ECF 1 ¶93.[7]  It would be completely contrary to how the open meetings operates as the "Board and USD 497 administrators often discuss USD 497 employees outside of such executive session.  In fact, every USD 497 open meeting includes a period for recognitions during which it acknowledges and

---

[7] Defendant Hill allowed others to name teachers and recordings of students. ECF 1 ¶94-95.

recognizes specific named USD 497 staff and students for accomplishments that they have achieved." ECF 1 ¶130.[8]  Thus, if KN is indeed a policy that is supposed to apply to open meetings – and according to defense counsel has been applied – it is undisputably viewpoint discrimination: all of those topics are fair game at a Commissioner's open meeting if positive but prohibited if negative. Negative speech KN calls "complaints" about the same topics is prohibited.  And surely defendants aren't claiming that the entirety of those subjects – good or bad – are subjects prohibited at the open meetings.  Even that would be unconstitutional.

In *Rosenberger*, the Supreme Court considered a university rule providing reimbursement to student groups for printing costs that excluded publications "with religious editorial viewpoints." 515 U.S. at 831. The university defended its rule as viewpoint neutral because it prohibited religious speech no matter the perspective of the speaker. Id. at 830. The university submitted that its rule was viewpoint neutral because it prohibited all religious speech—pro or con, theistic or agnostic. Id. at 831. The Supreme Court held otherwise. In doing so, the Court rejected the notion that a law is viewpoint neutral when it restricts an entire class of viewpoints, rather than just one side of the debate. "It is as objectionable to exclude both a theistic and an atheistic perspective on the debate as it is to exclude one, the other, or yet another political, economic, or social viewpoint." *Id*. The argument "that debate is not skewed

---

[8] ECF 1 ¶¶ 18 & 19 ("During its regular meetings, the Board receives reports and other information from USD 497 employees, including the superintendent Anthony Lewis"; "School administrators regularly recognize employees by name during public portions of the Board's open meetings").

so long as multiple voices are silenced is simply wrong: the debate is skewed in multiple ways." *Id.*

So no matter how the defendants want to wordsmith the KN policy – even taking a position that naming names is somehow prohibited while allowing the topic to be talked about – it still excludes an entire class of viewpoints. Those who believe that specific individuals are responsible for the failures or successes of the school district cannot voice that perspective. Put more simply: words matter. Criticizing school officials by name conveys a unique message that a vague reference to teachers or administrators or the school district does not capture.

But according to the allegations in the Complaint, the open meetings allow speech on all of those topics and allow naming names – as long as it is positive. Under defendants' interpretation, no citizen can speak negatively regarding its Complaint subject matter at an open meeting.  Instead, the sole avenue for that kind of speech is through the KN procedure.  If KN Policy is what defendant Hill claims it is, it is facially viewpoint discrimination as it does not purport to suppress all speech – namely positive speech or compliments.  Rather, only when the viewpoint is negative.

And even on its face the KN Policy does not prohibit mentioning a name. Then the KN policy has nothing to say about speech topics at open meetings.  The BCBI policy is directed to that.  And even if the KN policy purported to identify topics, it is limited to "complaints" – whatever that word purports to encompass.  It is not defined.  But one must assume "complaints" mean negative speech about "policy, curriculum, instructional materials, facilities, services, personnel."  All of that is

facially viewpoint discrimination and certainly, as applied to Dr. Spiehs, defendant Hill barred negative speech about those topics. Defendant Hill barred Dr. Spiehs from even naming defendant Lewis name – or any pseudonym. Dr. Spiehs could not even mention defendant Lewis' salary – which is in the public domain.

Defendant Hill makes the bare assertion that she "was not the final policymaker for USD No. 497." ECF 27 p.10. Defendant Hill can have direct liability as the USD 497 board can possess final policy making authority – meaning it was the policy of the Board to ban Dr. Spiehs or ban altogether his participation at board meeting via any avenue including WebEx. This does not mean defendant Lewis did not have final policy making authority as to those actions.[9] The acts of banning Dr. Spiehs from property or participating in school board meetings could be a combination of policy making by defendant Lewis or Defendant Hill. "A single act of an employee may be imposed on a local governmental entity if the employee possesses final authority to establish policy with respect to the challenged action." *Ireland v. Jefferson Cnty. Sheriff's Dep't,* 193 F.Supp.2d 1201, 1226 (D.Colo.2002). At this juncture in the proceedings, the relationship between defendant Lewis and the School Board defendants is factual. *Id.* at 448-49 (three factors: (1) whether the official is meaningfully constrained by policies not of that official's own making; (2) whether the official's decision are final – i.e., are they subject to any meaningful review; and

---

[9] "If an official, who possesses final policymaking authority in a certain area, makes a decision — even if it is specific to a particular situation — that decision constitutes municipal policy for § 1983 purposes." *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir.1995).

(3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority).  Banning individuals from USD 497 property or meetings could rest with the school board or its Superintendent – or both. The chain of authority was alleged that the Superintendent was employed by the Board and answered to the Board. "Lawfully empowered decisionmakers cannot insulate themselves from liability under section 1983 by knowingly allowing a subordinate to exercise final policymaking authority vested by law in the decisionmakers." *Ware v. Unified School District No. 492*, 902 F.2d 815, (10th Cir.1990). The allegations indicate that defendant Lewis' "decision is couched as a policy statement expressly approved by the policymaking entity, or when the decision manifests a custom or usage of which the entity must have been aware." *Id*.

## Conclusion

The Court should deny the defendant Erica Hill's motion to dismiss.


/s/Linus L. Baker
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:         913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

Certificate of Service
    The above was provided notice to all parties entitled to such notice pursuant to the Court's electronic filing system.

/s/Linus L. Baker
Attorney for the plaintiff