IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JUSTIN SPIEHS<br><br>Plaintiff<br><br>v.<br><br>USD 497, DOUGLAS COUNTY, KANSAS )<br>LAWRENCE KANSAS SCHOOL DISTRICT *et al*<br>Defendants | Case No.  Case No. 23-4121-TC-GEB<br><br>MOTION TO REVIEW MAGISTRATE<br>ORDER ON DISPOSITIVE ISSUE<br>PURSUANT TO FED.R.CIV.P.72(B) |

**SUBSEQUENT FACTS**

The plaintiff Dr. Justin Spiehs moved to amend or otherwise supplement his complaint with additional facts as to USD497 and then to two new defendants Kelly Jones and Jeanice Swift in their individual capacities.  The Magistrate erroneously held that the "Plaintiff's Motion brings no new facts regarding the date the 2021 no-trespass order was imposed." ECF 77, p.11.  Besides missing the irrelevancy of the former Superintendent's 2021 decision, it fails to recognize a plethora of new facts, since the filing of the First Amended Complaint (as against USD497), and then to Jones and Swift as set forth in the proposed complaint (ECF 67-1).  The Magistrate referred to futility as to Jones and Swift but either combined or omitted any analysis how the new facts were pertinent to the claims against USD497.  The plaintiff set out facts regarding the decisions of Kelly Jones and the new Superintendent Jeanice Swift, to add them as parties.  Jones engaged in numerous censoring and removals of Dr. Spiehs from the WebEx connections to the open meetings.  Superintendent's Swift's decision to not permit Dr. Spiehs to attend church services on USD497 property is certainly implicated.  Those are all new facts.  The plaintiff sought to serve a supplemental pleading under Federal Rule of Civil Procedure 15(d) which provides

1

transactions that occurred after the pleading it supplements.  Whether to permit a

party to serve a supplemental pleading is at the discretion of the Court. *See Walker*

*v. United Parcel Service, Inc.*, 240 F.3d 1268, 1278 (10th Cir.2001).

The Magistrate held in ECF 77 that:

> Plaintiff's attempt to add facts to support standing regarding the First Amendment claim for participation in religious services at Free City Church appear to this Court to be irrelevant where the claim is subject to the same time bar of the 2021 no-trespass order its' based upon (ECF No. 58 at 10). Additionally, even without the time bar, the pleadings still lack an injury-in-fact because the described conduct is not factually related to the 2021 no-trespass order issued by the Board.
>
> Plaintiff now alleges he emailed acting Superintendent Swift about attending Free City Church services on district property and received no response. But it appears to the Court, Free City Church is operated separately from the school district and only uses school district property to worship. There are no allegations that the Board exercises control over attendance at Free City Church, and this Court would be hard pressed to believe any evidence will be produced to that effect. Thus, any claims around preclusion of attendance of Free City Church, not operated or controlled by the Board, fails to support an injury-in-fact caused by the Board's 2021 no-trespass order. And any such claims fail to support Plaintiff's claims against the Board.

The Magistrate's ruling makes the plaintiff's point: the 2021 Lewis ban is

irrelevant and not connected to Superintendent Swift's decision and her refusal to

give Dr. Spiehs permission to attend church services on USD497 property in 2025.

The Magistrate acknowledges that it is Superintendent's Swift's refusal to grant Dr.

Spiehs permission as a discrete act yet "irrelevant" because the Magistrate held there

could not be evidence that USD497 even possesses authority to bar Dr. Spiehs from

church service conducted by third parties.  Indeed, the plaintiff is not complaining

about the former Superintendent's no-trespass policy as those claims have been

dismissed.  But in this factual scenario the Magistrate imagines that Superintendent

Swift is simply enforcing her former Superintendent's ban – which is beyond the

pleadings and analysis.  Rather, Dr. Spiehs complains of Superintendent Swift's 2025 refusal to give permission to Dr. Spiehs to attend church on USD497 property.  That is a discrete act and new subsequent facts.  But when examined more closely, the Magistrate actually disclaims the idea that Dr. Spiehs is actually banned in 2025 from church services by the former Superintendent's ban.  The Magistrate makes the plaintiff's point as to how absurd the former Superintendent's ban was reaching to prohibiting Dr. Spiehs from a church service under a contractual arrangement in which USD497 has divested itself of that kind of control.  According to the new Superintendent Swift, she is enacting her own withholding of permission for church attendance. That makes the plaintiff's point that Superintendent Swift is the new sheriff in town and enacts her own policies and whether to permit Dr. Spiehs permission on her watch is her discrete act and decision.  The fact that Dr. Spiehs asked for permission from Superintendent Swift, to which Dr. Swift did not disclaim (a discrete act) that authority or communicate to Dr. Spiehs that he needed no permission, there is ample evidence to demonstrate USD497 will not permit Dr. Spiehs to attend church on USD497 property in 2025.

**SPIEHS IS SUBJECT TO THE NEW APPLICATION BY INDIVIDUALS OF SPEECH RULES**

The Court held that "Spiehs cannot challenge the new policies, either. He does not allege that he was subject to them, or that enforcement is otherwise imminent, so he lacks standing to attack them." *Spiehs v. Lewis*, No, 23-cv-04121-TC-GEB  2024 WL 5107274 .at *8 (D. Kan. Dec. 13, 2024).  But Spiehs has alleged he is both subject to Jones and Swift's WebEx discrimination and that whatever source of authority

these individual defendants claim is disconnected from the actual new policies.  The

Court acknowledged that Dr. Spiehs pled a viable retaliation claim involving WebEx

meetings. *Id.* at \*9.   "Ultimately, then, Spiehs has pled a viable viewpoint

discrimination claim based on his WebEx activity." *Id.* at \*11.   Putting aside the

individuals, this subsequent conduct implicates the Board and has injured Dr.

Spiehs.  Rather than filing a second lawsuit to redress those injuries, an amendment

redressing those injuries in this lawsuit is appropriate.

As to individuals, Kelly Jones and Jeanice Swift are sought to be added. The

Court analyzed court cases for the proposition that Hill and Lewis did not have fair

notice that the Board's policies discriminated but did not address whether they each

had fair notice that viewpoint discrimination itself is clearly established.  And the

Amended pleading avers that the individuals are not actually following any Board

policy but going rogue.  Put another way, and putting aside the Board policies, it is a

different question as to whether viewpoint discrimination is clearly prohibited versus

whether knowing that a *policy* contains impermissible content based or viewpoint

based restrictions.[1]  Plaintiff pled new facts which show violations of the Constitution

by Jones and Swift. If Swift claims she is enforcing the former Superintendent's 2021

ban in 2025, enforcement is still a discrete act that injured Dr. Spiehs in 2025.  See

ECF 67-1 ¶82 (Dr. Spiehs' request to attend church on March 31, 2025, rejected by

---

[1] Thus, when the Court ruled that "like Hill, Lewis had no reason to know that the Board policy discriminated on the basis of viewpoint" does not answer the question of whether Jones and Swift had reason to know that their own conduct of viewpoint discrimination is prohibited.

Swift); ¶83 (Swift has discretion to grant permission yet "denying Dr. Spiehs his repeated requests"); ¶104 ("On each date listed below, Dr. Spiehs has asked permission to appear in person at a public meeting but was denied by Superintendent Jeanice Swift on March 10, 2025"); ¶105 (January 13, 2025, interrupting Dr. Spiehs using "foul language"); ¶ 106 (Jones' characterization of the word "shit," "fuck," "bullshit," and "bitches" as "obscene language");¶107 (interrupting stating "you cannot use foul language when you are addressing this board" and removing Dr. Spiehs from WebEx connection); January 27, 2025 (Costello interrupting calling Dr. Spiehs "crazy Justin Spiehs") ¶108; reading from school library book titled "The Hate You Give" quoting "Who gives a fuck? Fuck. Seven croaks" in which Jones stops Dr. Spiehs with gavel stating "that's your warning"; ¶109 Spiehs reading verbatim from book "the word fuck in various places in the book"; ¶110; Jones muting microphone and stopping Spiehs ¶111; Telling Board these words are in the school libraries available to minors ¶112; Dr. Spiehs reading verbatim from the library book "Fuck that cop, bruh. Fuck the police coming straight from the underground" in which Jones "slammed her gavel down interrupting Dr. Spiehs" and removing Dr. Spiehs from the meeting; Dr. Spiehs appearing at a subsequent meeting stating "I came in here a couple weeks ago and I talked about how your guys' policy is bullshit" which "Jones interrupted him again and removed him from the meeting prior to the end of his allotted speaking time." ¶119; On March 24, 2025, Spiehs spoke via WebEx and repeated the letters of  Fah-HQ and pronounced it as "fah que which Jones interrupted Spiehs ¶122; Dr. Spiehs again reading from the "Hate You Give" library

book stating "Fuck the police. Fuck the police" which elicited no warning or banishment; ¶123. Spiehs "continued saying that the same words were contained in a NWA song titled Fuck tha police" in which defendant Jones interrupted Dr. Spiehs and removed him from the meeting.  There is no authority for Swifts' or Jones' actions in any of the USD497 policies ECF 67-1 ¶¶25-29.  These allegations demonstrated that these individuals violated clearly established law in engaging in viewpoint discrimination, irrespective of the Board's policy, of which there is no qualified immunity.

Dr. Spiehs was repeatedly interrupted during his allotted three minutes of speaking time. Judge Robinson ruled in *Spiehs v. Armbrister,* No. 24-4005-JAR-BGS, 2025 WL 548423 (D. Kan. Feb. 19, 2025) that it was unclear how a meeting could be disrupted during the allotted 3 minutes of speaking time ("Given that members of the public are entitled to three uninterrupted minutes during the public-comment period, it is not clear—based on the allegations—that such speech causes disruption or disorder when the Commission has already set aside dedicated time for the individual speakers").  In *Schmidt v Huff*, No. 25-CV-2081-EFM-GEB 2025 WL 901335 (Kan.D. 3/25/2025), parent Schmidt was banned from school property.  Judge Melgren held that the ban was unconstitutional. *Id*. at *4.  Dr. Spiehs was prohibited from reading USD497 curriculum books. Similar to Dr. Spiehs reading one of the library books contained in USD497 curriculum, that Brevard County mother was interrupted by a board member before she could even start.  *See Moms for Liberty v. Brevard Pub. Sch.,* 118 F.4th 1324, 1331 (11th Cir. 2024). The "government must abstain from

6

regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.* at 1332 (quoting *Rosenberger*). Specifically, in April of 2025, it was clearly established that "any government restriction on speech in a limited public forum must … be viewpoint neutral." *Shero v. City of Grove,* 510 F.3d 1196, 1202 (10th Cir. 2007) (citing *Rosenberger*, 515 U.S. at 829); s*ee also Pleasant Grove City v. Summum,* 555 U.S. 460, 470 (2009)(same); *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 350 (5th Cir. 2001) ("It is well settled that viewpoint discrimination is a clearly established violation of the First Amendment in any forum."); *Mesa v. White,* 197 F.3d 1041, 1048 (10th Cir. 1999) (holding that the district court should have denied the defendants' motion for summary judgment because there was evidence that the defendants prevented the plaintiff from speaking at a county commissioner's meeting because of the viewpoints plaintiff intended to express). Thus, every reasonable government official would have understood that terminating Dr. Spiehs' WebEx connections (removal from the meeting) because of the viewpoints expressed therein violates the First Amendment.

Thus, the amended complaint alleges that the individuals engaged in viewpoint discrimination irrespective of whether the individuals were following Board policies.  There is no qualified immunity for viewpoint discrimination and removals from the WebEx because of those viewpoints as demonstrated in Judge Phillips analysis in *Vollmecke* citing a plethora of case law.

**CURRENT SUPERINTENDENT'S DECISION TO IMPOSE HER REFUSAL TO GIVE PERMISSION IS A NEW AND SUBSEQUENT INJURY TO DR. SPIEHS**

As pled, the current Superintendent Swift is not bound at all to the prior discretionary decisions of a prior school superintendent. Lewis' ban is not an irrevocable criminal conviction. Instead, it is among a host of prior policy decisions that the new Superintendent is not bound to. With that Swift has immediate discretion to determine in 2025 whether Dr. Spiehs can be at USD497 property on Sunday. The prior Superintendent's decisions are irrelevant under the Court's prior rulings. The Amendment focuses on the current Superintendent Swift's decision made in 2025 in which she refuses to give permission to Dr. Spiehs to come onto the property of USD497 to even attend church conducted by third parties during non-school hours in 2025. This is subsequent conduct which constitutes a discrete and new injury to Dr. Spiehs.

**QUALIFIED IMMUNITY IS NOT LIMITED TO TENTH CIRCUIT PRECEDENT**

The actions of Jones and Swift are viewed as viewpoint discrimination and retaliatory. In *MacQuigg v. Albuquerque Pub. Schs. Bd. Of Educ.*, Civ. No. 12-1137 MCA/SCY, 2015 WL 13650030, at *7 (D.N.M. Feb. 6, 2015) that court concluded that "a reasonable jury could find that the justifications offered by Defendant for banning Plaintiff were pretexts masking viewpoint discrimination, and that Defendant targeted Plaintiff precisely 'because of' Plaintiff's unwelcome criticism of the Board's administration of APS and of Defendant, personally" (quoting *Pahls v. Thomas,* 718 F.3d 1210, 1230 (10th Cir. 2013). And then qualified immunity is not limited to Tenth Circuit precedent as the Magistrate referred to ((ECF 77, p.11) in stating that Dr.

Spiehs failed to meet burden that "Defendants' enforcement of the Board's policies was a violation of clearly established Tenth Circuit law"). *See Baca v. Cosper,* 128 F.4th 1319, 1328 (10th Cir. 2025) (weight of authority from other courts). Refusing to permit Dr. Spiehs from attending church on a Sunday in which there is no school being conducted particularly when USD497 has divested itself of removal authority and no safety concerns are present is "an obvious case." *See Taylor v. Riojas*, 592 U.S. 7, (2020) ("general constitutional rule" can be a basis for relief in an "obvious" case). The Magistrate limited her assessment to this Court's ruling and two non-Tenth circuit cases but *Baca v. Cosper,* at 1328 n.5 now instructs the Court to "conduct [its] clearly established analysis with full knowledge of settled case law" irrespective of the briefing by the parties. The Court did not have the benefit of *Baca* when the 2024 order on qualified immunity was made.[2]  Therefore, the Court must assess the clearly established prong of the qualified immunity analysis by looking to the full landscape of the law, including cases that neither party has identified. Even still, Judge Phillips in *Vollmecke v. Independence School District v. Independence School District,* 753

---

[2] Because the Court's prior ruling is interlocutory, the Court is free to reconsider that ruling and particularly when Tenth Circuit law clarifies or changes the analysis regarding the obligations of a lower court to survey settled case law irrespective of briefing and beyond that of Tenth Circuit holdings. See *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007). ("remain free to reconsider their earlier interlocutory orders").  It is anticipated that Dr. Spiehs' granddaughter will be attending the USD497 school district and one must believe Superintendent Swift will decide if the grandfather is to be barred from his granddaughter's school activities. There has been a clarification or an intervening change in controlling law as set out in *Baca* and the plaintiff urges there is a need to correct clear error and manifest injustice in the Court's ruling that Dr. Spiehs must endure for the rest of his life either a ban issued by a former Superintendent no longer employed by the USD497 school district or Dr. Swift's refusal to give permission.

F,Supp 3d. 792, 808 (W.D. Mo. 2024) recognized this. "Caselaw clearly established that restrictions on speech in a limited public forum must be reasonable and viewpoint neutral." *Id.* Bans are only reasonable upon "situations of threat, constant harassment, or consistent disruption." *Id.* (collecting cases). Judge Phillips stated that although there was no Eighth Circuit case "directly on point" she ruled that a "robust consensus of persuasive authority puts the constitutional question beyond debate." *Id.* Judge Phillips' analysis was correct in citing a plethora of cases to establish Dr. Spiehs' clearly established rights. *Id.* at 808.

### CHURCH AND SUBSEQUENT REMOVALS FROM OPEN MEETINGS

Dr. Spiehs had never requested permission to attend church on USD497 property from either former Superintendent Lewis or the current Superintendent Swift. He has done so on April 2025 and Superintendent Swift will not give him permission to attend that church. That is a discrete unlawful act which constitutes an injury to Dr. Spiehs. *Herrera v. City of Espanola,* 32 F.4th 980 (10th Cir. 2022). In the Court's original order (ECF 58) the Court held that:

> Spiehs is subject to a no-trespass order that sweeps across all District property. See id. at ¶¶ 35, 61. That property is open to the public—and importantly, Spiehs says, it is open "to churches to conduct religious activities on Sundays." Id. at ¶ 147. Thus, the no-trespass order means that Spiehs, were he so inclined (and there is no indication he is, so this appears to be rhetorical), "is prohibited from associating with those parishioners, listening to [their] messages, or in participating in those religious exercises." Id. at ¶ 149.

*Spiehs v. Lewis*, No, 23-cv-04121-TC-GEB  2024 WL 5107274 .at *3 (D. Kan. Dec. 13, 2024).

The Court held in its ruling that:

10

> The statute of limitations issue dispenses with half of Spiehs's retaliation claim (first cause of action) and his omnibus claim about church services (third cause of action). Both arguments depend on the no-trespass order, Doc. 50 at 12, 36, but the time to sue over that order has passed.

*Id.* at *5. The Court further held in footnote 3 the following:

> Even if the claim were not barred, Spiehs very likely lacks standing to assert his third cause of action. He says the no-trespass order would prevent him from attending church services on District property, Doc. 50 at ¶¶ 35, 72, 149, but never alleges that he has tried to attend those services. In other words, Spiehs fails to allege that he has an injury-in-fact because there appears to be no credible intention of engaging in conduct that is affected by this order. See generally *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) (describing ways in which a plaintiff could have standing to bring a pre-enforcement challenge).

*Id.* at *14.

The Second Amended Complaint (ECF 67-1) first alleges that:

> There is no such thing as an eternal incommutable policy under the USD 497 policy framework – including a so-called "permanent" ban of Dr. Spiehs from USD 497 property. This policy is subject to change at the discretion of the Board or the new Superintendent. The defendants have not divested themselves legally of a right to modify, nullify, or otherwise vacate the ban issued by its former Superintendent. Because the USD 497 defendants have the right, if not the duty, to periodically review its policies and prior decisions of its Superintendents, the fact that USD 497 and its new Superintendent chooses to exercise that discretion in a way that endorses the deliberate indifference of the injurious results of former Superintendent Dr. Anthony Lewis' ban decree policy solely directed to Dr. Spiehs it is a current policy that is actionable because it injures Dr. Spiehs' Constitutional rights.

ECF 67-1, pp.1-2.

It was alleged under the Second Cause of Action that:

> 76 There is no USD 497 policy that makes a prior policy of a USD 497 Superintendent unreviewable. In fact, Policy BDA states that "The board will regularly review its policies and will, as needed, amend and supplement existing policies. Board policies may be amended at any regular or adjourned meeting of the board by a majority vote of the members of the board." The ban by former Superintendent Lewis is a policy that is amenable to review and change by the board or the current Superintendent.
>
> 78. Dr. Spiehs has requested permission from the defendants to attend Free City Church on USD 497 property for church services occurring in April 2025 including its Easter service. Free City Church says they welcome everyone including even

Dr. Spiehs on its website.   https://www.fcclawrence.com/learn  It states "If you're new to our church or considering a visit, we would love to welcome you."

79. People attending Free City Church are not required to request permission from USD 497 to attend or visit Free City Church services.

80. Free City Church will have a Friday, April 18, 2025, Good Friday service which Dr. Spiehs would like to attend.  https://www.fcclawrence.com/events/good-Friday

81. Dr. Spiehs has contacted Free City Church to see if he is welcome to visit or attend and behold – Free City Church has responded in the affirmative that even Dr. Spiehs is welcome!

82.On March 31, 2025, Dr. Spiehs emailed Dr. Jeanice Swift at 12eanice.swift@usd497.org stating "I'd like to attend the Free City Church service held Sunday at 10:30am at Liberty Memorial Central Middle School. Please let me know if I am able to attend it."

83. The fact that the defendants have the authority and discretion to grant permission for Dr. Spiehs to do any or all of the prohibited acts under the Lewis ban – and have exercised that discretion in denying Dr. Spiehs his repeated requests for the defendants to exercise that discretion each remain a "discrete act." *Vasquez v. Davis*, 882 F.3d 1270, 1277 (10th Cir. 2018).  Each time the defendants refuse to exercise that discretion they are still relying on the policies that give each that discretion.

84. The Lewis Ban was or has become by ratification or acquiescent conduct  a municipal policy that deprives Dr. Spiehs of his Constitutional rights and of which the defendant Board and Superintendent demonstrate deliberate indifference due to their knowledge of Dr. Spiehs' deprivations and their ability to rely upon Board policy to vacate, modify, or nullify the Lewis Ban in part or in whole which would alleviate Dr. Spiehs' deprivations.

87. Each denial to Dr. Spiehs' requests since the Lewis Ban went into effect are discrete acts of the Superintendent and a policy of the Board.  This policy remains in effect and is being enforced by the Superintendent.

Superintendent Swift has discretion to grant permission to Dr. Spiehs and her refusal to do so in 2025 is a discrete act.  Superintendent Swift is not bound to enforce anything her predecessor former Superintendent did policy wise.  And if she is her denial of permission is a "continual unlawful act." Thus Superintendent Swift denial of permission for Dr. Spiehs' church attendance is not connected and certainly not inextricably linked to a prior Superintendent's decision.   Given that a new Superintendent has discretion to implement her own policies, her 2025 decision to

13

not grant permission to Dr. Spiehs to attend church on USD497 property in 2025 is a discrete act within the two year statute of limitations.

**CONCLUSION**

The addition of Kelly Jones and Superintendent Swift along with the additional facts state and supplement existing claims the Court has permitted under its Order against USD497.  The Amendment is not futile as to those three defendants. The plaintiff Dr. Justin Spiehs moves that the recommendations of the Magistrate not be accepted and that his proposed Complaint filed at ECF 67-1 be permitted. .

/s/Linus L. Baker
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:         913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

Certificate of Service
    The above was provided notice to all parties entitled to such notice pursuant to the Court's electronic filing system.

/s/Linus L. Baker
Attorney for the plaintiff