**In the United States District Court
for the District of Kansas**

———————————

Case No. 23-cv-04121-TC-GEB

———————————

JUSTIN SPIEHS,

*Plaintiff*

v.

ANTHONY LEWIS, ET AL.,

*Defendants*

———————————

## ORDER

Justin Spiehs sued a series of defendants associated with the Lawrence, Kansas School Board, alleging violations of the First and Fourteenth Amendments. Doc. 1; Doc. 50. Most of his claims were dismissed. Doc. 58. Spiehs then moved to amend his complaint a second time. Doc. 67. Magistrate Judge Birzer recommended that the motion be denied as futile. Doc. 77. Spiehs objected. Doc. 78. For the following reasons, his objections are overruled and the R&R is adopted.

**I**

**A**

When a magistrate judge issues a report and recommendation on a dispositive pretrial matter, a party objecting to the recommendation must "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district judge must then

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

1

Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). This means that objections to a magistrate judge's recommended disposition must be "both timely and specific to preserve an issue for de novo review by the district court . . . ." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). To be timely, the objection must be made within 14 days after service of a copy of the recommended disposition. Fed. R. Civ. P. 72(b)(2). Objections are sufficiently specific if they "focus the district court's attention on the factual and legal issues that are truly in dispute." *One Parcel of Real Prop.*, 73 F.3d at 1060. Where a party fails to make a proper objection, a district court may review the recommendation under any standard it deems appropriate, even for clear error. *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citations omitted); *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1125 (D. Colo. 2019).

**B**

This case concerns Justin Spiehs, a self-described community activist who was banned from all property belonging to Unified School District No. 497 in Lawrence, Kansas.[1] Doc. 1. In October 2021 and during the period of time where precautions against the spread of COVID-19 were the norm, Superintendent Anthony Lewis issued a no-trespass order against Spiehs after Spiehs attended a public presentation at Lawrence High School without wearing a mask, in violation of the District's masking policy at the time. Doc. 50 at ¶¶ 43–45. The order barred Spiehs from all District property but permitted him to attend school board meetings remotely through WebEx, a videoconferencing service. *Id.* at ¶¶ 52, 61, 86.

Spiehs used WebEx to attend several board meetings in 2022. At three of those meetings—in February and April 2022—his connection was terminated after he made comments that the Board determined violated its public commentary policies, which directed that complaints about specific staff or students be addressed through other channels rather than during public comment. Doc. 50 at ¶¶ 92–114.

Spiehs sued in December 2023. His suit alleged that the no-trespass order and the Board's enforcement of its public commentary

---

[1] All document citations are to the document and page number assigned in the CM/ECF system.

policies violated his rights under the First and Fourteenth Amendments. Doc. 1; Doc. 50.

A Memorandum and Order, issued on December 13, 2024, rejected most of the claims in his case. Doc. 58. It dismissed Spiehs's claims arising from the no-trespass order as time-barred, because the two-year statute of limitations began running when the order issued in October 2021 and Spiehs did not sue until December 2023. *Id.* at 8–10. It dismissed claims against the individual defendants—Superintendent Lewis, Board President Erica Hill, and Board Clerk Alyse Donnell—on qualified immunity and personal participation grounds. *Id.* at 19–24. It found Spiehs's facial vagueness challenge to the Board's policies implausible, *id.* at 10–12, and his equitable challenges to the Board's old policies moot, since those policies were amended in June 2022 and November 2023, *id.* at 12–13. The Memorandum and Order also noted, in a footnote, that Spiehs likely lacked standing for his claim that the no-trespass order prevented him from attending church services on District property, because he never alleged any intention of actually attending such services. *Id.* at 10 n.3. The sole surviving claims were viewpoint discrimination and retaliation theories based on Spiehs's WebEx activity, proceeding only against the Board. *Id.* at 14–19.

Spiehs subsequently sought leave to amend his complaint in three specific ways. Doc. 67. First, he proposed to substitute Jeanice Swift—the District's interim superintendent who replaced Lewis—as an individual-capacity defendant, on the theory that Swift's 2025 decision not to rescind the no-trespass order constitutes a new "discrete act" that restarts the statute of limitations. *Id.* at 1; Doc. 69 at 1. Second, he sought to add facts showing that he had contacted Free City Church—a church that leases District property to hold services—and been told he was welcome, and that he emailed Swift requesting permission to attend services on District property without receiving a response. Doc. 67 at 2; Doc. 67-1 at ¶¶ 78–82. Third, he sought to add Kelly Jones, the presiding Board President, as a defendant and allege additional WebEx incidents in which Jones interrupted and removed Spiehs for using language she characterized as obscene. Doc. 67 at 1–2; Doc. 67-1 at ¶¶ 105–123.

Defendants opposed the motion as futile. Doc. 68. Magistrate Judge Birzer agreed and recommended that the motion be denied. Doc. 77. She concluded that the claims based on the no-trespass order remain barred by the statute of limitations regardless of which

superintendent enforces the order, that the Free City Church allegations still fail to state a claim because the church is operated separately from the District, and that Swift and Jones are entitled to qualified immunity for the same reasons that shielded their predecessors. *Id.* at 7–11. Spiehs filed timely objections. Doc. 78.

## II

Spiehs raises several objections to the R&R. None identifies an error in Judge Birzer's recommendation that warrants reversal. As a result, his objection is overruled

### A

As noted, Spiehs's claims arising from the no-trespass order were dismissed as time-barred. Doc. 58 at 8–10. Spiehs attempts to plead around that ruling by substituting the current interim superintendent, Jeanice Swift, and arguing that her 2025 decision not to rescind the order is a new "discrete act" that restarts the statute of limitations. Doc. 67 at 1; Doc. 69 at 1. Judge Birzer disagreed, reasoning that Spiehs alleges only the continued imposition of the same order by a new individual. Doc. 77 at 7. Spiehs objects. Doc. 78 at 1–3.

Spiehs' objection to Judge Birzer's conclusion fails. As was the case with Spiehs's prior claims, the continuing violation and repeated violation doctrines do not apply to his claims against Swift because the issuance of the original order (that continues to be enforced by Swift) was a discrete act. Doc. 58 at 9 (citing *Vasquez v. Davis*, 882 F.3d 1270, 1277 (10th Cir. 2018); *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011)). Spiehs's new theory does not change the analysis. Swift's refusal to rescind the order is not a new deprivation, rather it is a decision not to undo an old one. Doc. 58 at 9 (citing *Vasquez*, 882 F.3d at 1277). "True, the order may be enforced multiple times. But each time, Defendants must rely on the original order." *Id.* The continuing violation doctrine "is triggered by continual unlawful acts, not by continual ill effects from [an] original violation." *Mata*, 635 F.3d at 1253.

### B

Spiehs next argues that he has cured the standing deficiency identified in a Memorandom and Order, Doc. 58, with respect to his potential attendance of Free City Church services. Doc. 78 at 10–12. In particular, he now alleges that he subsequently contacted Free City

Church, was told he was welcome, emailed Swift requesting permission to attend services on District property, and received no response. Doc. 67-1 at ¶¶ 78–82.

Once again, Judge Birzer's rejection of his claim was not erroneous. Even if this evidence gave him standing, it remains tethered to the no-trespass order, which remains time-barred. Doc. 58 at 8–10. Spiehs cannot avoid the statute of limitations by identifying a new context in which the same deprivation causes him harm. The underlying injury is exclusion from District property, and the time to challenge that exclusion has passed. *See supra* Part II.A.1; Doc. 58 at 8–10.[2]

## C

Finally, Spiehs objects to the R&R's conclusion that Swift and Jones are entitled to qualified immunity as to his viewpoint discrimination and retaliation claims based on his WebEx activity. Doc. 78 at 6–9. He catalogs a series of WebEx meetings at which Jones allegedly interrupted and removed him for using what she characterized as "obscene language" while reading from books available in District libraries. *Id.* at 5–6. He argues that Jones and Swift were "going rogue" rather than following Board policy, and that viewpoint discrimination is clearly established regardless. *Id.* at 4. He also invokes *Baca v. Cosper,* 128 F.4th 1319 (10th Cir. 2025), for the proposition that courts must survey the full landscape of the law, including persuasive authority from other circuits. *Id.* at 8–9.

Spiehs' arguments do not undermine Judge Birzer's conclusion that qualified immunity applies. The Memorandum and Order analyzed whether the Board's speech restrictions violated clearly established law and concluded that they did not. Doc. 58 at 21–24. Courts continue to disagree about whether policies directing complaints about staff and students to other channels constitute viewpoint discrimination. *Compare Griffin v. Bryant*, 30 F. Supp. 3d 1139, 1188 (D.N.M. 2014), *with Scroggins v. City of Topeka*, 2 F. Supp. 2d 1362, 1372 (D. Kan. 1998); *see also Pollak v. Wilson*, No. 22-8017, 2022 WL 17958787, at *7 (10th

---

[2] Moreoever, even assuming neither the time bar nor standing deficiency existed, Spiehs claims' would fail on qualified immunity grounds as the next subsection notes. *See* Part II.C., *infra.*

Cir. Dec. 27, 2022). But the persistence of that dispute confirms law is not clearly established. *Reichle v. Howards*, 566 U.S. 658, 669–70 (2012).[3]

Spiehs invokes cases recognizing that restrictions on speech in a limited public forum must be viewpoint neutral. Doc. 78 at 7 (citing *Shero v. City of Grove*, 510 F.3d 1196, 1202 (10th Cir. 2007)). He also cites *Mesa v. White*, 197 F.3d 1041, 1048 (10th Cir. 1999). But the question here is whether removing a speaker for using language characterized as obscene during public comment—even language read from books available in school libraries to make a point about school curricula—constitutes viewpoint discrimination rather than a reasonable, content-neutral enforcement of meeting decorum. Neither *Shero* nor *Mesa* provides an answer, much less one that clearly established the law. *Shero* addressed a city's refusal to allow signs on public utility poles, 510 F.3d at 1199, and *Mesa* involved a commissioner who silenced a speaker based on the speaker's criticism of county governance, 197 F.3d at 1044–45, which is a far more straightforward case of viewpoint-based exclusion. Neither case addresses the line between viewpoint discrimination and the enforcement of decorum rules restricting the use of profanity, which is the key issue Jones's conduct presents. The persistence of that uncertainty confirms that the law was not clearly established as to Jones's specific conduct. *See Reichle*, 566 U.S. at 669–70; *see also* Doc. 58 at 21–24 (analyzing qualified immunity and concluding that no Supreme Court or Tenth Circuit decision clearly establishes that enforcement of the Board's public commentary policies constitutes viewpoint discrimination).

*Baca* does not change this conclusion. For one thing, *Baca* instructs courts to consider the weight of authority beyond the Tenth Circuit, 128 F.4th at 1325, a concept that is hardly novel. *See, e.g., Elder v. Holloway*, 510 U.S. 510, 516 (1994) (holding that courts evaluating qualified

---

[3] Spiehs's allegations about Jones interrupting him while he read from books in District libraries are not without some force. But the question is not whether a factfinder might eventually conclude that Jones's conduct was viewpoint-based. The question is whether clearly established law gave Jones fair notice that her conduct was unlawful. The general prohibition on viewpoint discrimination, *see Shero*, 510 F.3d at 1202, does not resolve the more granular question of whether a presiding officer may stop a speaker from reading profane passages aloud during a public meeting. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (requiring that clearly established law be defined with a "high degree of specificity").

immunity should use their "full knowledge of [their] own [and other relevant] precedents" rather than limiting the inquiry to authorities cited by the parties). For another, *Baca* does not hold that a "robust consensus" exists on the question at issue here. *Contra* Doc. 78 at 10. Rather, the cases Spiehs cites demonstrate the ongoing uncertainty; they involve different policies and different facts, and neither addresses the specific question presented here, namely, whether removing a speaker from a virtual meeting for using language characterized as obscene, even when read from books available in school libraries, constitutes viewpoint discrimination. *See Vollmecke v. Independence Sch. Dist.*, 753 F. Supp. 3d 792, 808 (W.D. Mo. 2024) (denying qualified immunity where a superintendent banned a speaker from all school property for a year based on political criticism, without any evidence of actual threat or disruption); *Mejia v. Lafayette Consol. Gov't*, No. 23-0307, 2025 WL 890525, at *10 (W.D. La. Mar. 20, 2025) (denying qualified immunity based on Fifth Circuit precedent holding that pretextual invocation of decorum rules to silence opposing viewpoints violates the First Amendment). But even if they were factually similar, it takes more than two district court decisions to create clearly established law. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 n.8 (2018) ("We have not yet decided what precedents—other than our own—qualify as controlling authority for purposes of qualified immunity."). No consensus of persuasive authority—much less controlling authority–establishes that these defendants' conduct is unconstitutional; the state of the law at the time the conduct was undertaken was certainly not beyond debate as qualified immunity requires. *See generally Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam) (summarily reversing denial of qualified immunity where the lower court failed to identify sufficiently specific precedent placing the constitutional question "beyond debate").

Spiehs separately contends that even if the proposed amendments are futile as to the individual defendants, the R&R failed to account for the fact that some of the new allegations—particularly those regarding Jones's WebEx removals—are relevant to his surviving viewpoint discrimination and retaliation claims against the Board. Doc. 78 at 3–4. But the Board's public commentary policies were amended in June 2022 and November 2023, which was after Spiehs's last alleged removal. Doc. 58 at 12–13. Equitable challenges to the old policies are moot, and Spiehs does not allege that the new policies have been applied to him. *Id.* at 13. To the extent the new allegations describe conduct that bears on the surviving claims, those claims are already proceeding against the Board and do not require amendment to do so.

Adding new factual allegations about post-amendment meetings does not remedy the mootness of the old policies or establish a new basis for relief that is not already encompassed by the surviving claims.

### III

For the foregoing reasons, Spiehs's Objections to the Report and Recommendation, Doc. 78, are OVERRULED. The Report and Recommendation, Doc. 77, is ADOPTED in its entirety. Spiehs's Second Motion for Leave to Amend Complaint, Doc. 67, is DENIED.

It is so ordered.

Date: April 16, 2026                    s/ Toby Crouse
                                        Toby Crouse
                                        United States District Judge

8